1  MITCHELL F. BOOMER (SBN 121441)
   JoANNA L. BROOKS (SBN 182986)
2  DYLAN B. CARP (SBN 196846)
   JACKSON LEWIS LLP
3  199 Fremont Street, 10th Floor
   San Francisco, CA  94105
4  Telephone     415.394.9400
   Facsimile:    415.394.9401
5
   Attorneys for Defendant
6  SIEMENS PRODUCT LIFECYCLE MANAGEMENT
   SOFTWARE INC.
7  (formerly known as UGS CORP.)

8               IN THE UNITED STATES DISTRICT COURT FOR THE

9                    NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO/OAKLAND DIVISION

11

12 | VANESSA FLINT, Individually and On Behalf | Case No. C 07 4640 MJJ |
   | of All Others Similarly Situated, | |
13 | | (Removed from San Francisco Superior |
   | Plaintiffs, | Court on September 7, 2007; Case |
14 | | No:CGC-07-465695) |
   | v. | |
15 | | **REQUEST FOR JUDICIAL NOTICE** |
   | UGS CORPORATION and DOES 1 through | **IN SUPPORT OF SIEMENS** |
16 | 100, inclusive, | **PRODUCT LIFECYCLE** |
   | | **MANAGEMENT SOFTWARE, INC.'S** |
17 | Defendants. | **MOTION TO TRANSFER VENUE** |
18 | | Date:   November 27, 2007 |
   | | Time:      9:30 a.m. |
19 | | Courtroom: 11, 19th Floor |
   | | Judge:  Hon. Martin J. Jenkins |
20

21

22

23 TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

24         PLEASE TAKE NOTICE that on November 27, 2007 at 9:30 a.m. in Courtroom 11 of the

25 United States District Court – Northern District of California, at 450 Golden Gate Avenue, 19th

26 Floor, San Francisco, California, Defendant SIEMENS PRODUCT LIFECYCLE

27 MANAGEMENT SOFTWARE INC. ("Siemens PLM Software"), by and through its attorney of

28 record, hereby respectfully requests that the Court take judicial notice pursuant to Federal Rule of

                                        1

1  Evidence Rule 201 of the following documents and facts in support of its Motion To Transfer

2  Venue.

3

4        1.  A true and correct copy of Plaintiff's first amended complaint and

5           accompanying verification originally filed on August 6, 2007 in San Francisco

6           County Superior Court, as <u>Flint v. UGS Corporation</u>, Case No. CGC -07-

7           465695 is attached hereto as Exhibit "A."

8        2.  The City of Cypress, California, is located in Orange County, California.

9        3.  General Order 349-A promulgated by the United States District Court, Central

10          District of California, states civil cases should be assigned to the Southern

11          Division of the Central District where two of the following criteria are met:

12          (1) the majority of Plaintiffs reside in the Southern Division; (2) the majority

13          of all named Defendants reside in the Southern Division; and (3) the majority

14          of all claims arose in the Southern Division.  General Order 349 states the

15          Southern Division of the Central District is comprised of Orange County.

16          True and correct copies of General Orders 349-A and 349 promulgated by the

17          United States District Court, Central District of California are attached hereto

18          as Exhibit "B."

19        4.  Attached hereto as Exhibit "C" is a true and correct copy of the opinion issued

20          by this Court in  <u>Jarvis v. Marietta Corp.,</u> U.S. Dist. Lexis 12659 (N.D. Cal.

21          1999).

22  Dated: ~~November~~ October 23 , 2007         Respectfully submitted,

23                       JACKSON LEWIS LLP

24

25

26                       MITCHELL F. BOOMER

                          JoANNA L. BROOKS

27                       DYLAN B. CARP

                          Attorneys for Defendant

28                       SIEMENS PRODUCT LIFECYCLE

                          MANAGEMENT SOFTWARE INC.

# EXHIBIT A

ROBERT C. SCHUBERT S.B.N. 62684
JUDEN JUSTICE REED S.B.N. 153748
MIRANDA P. KOLBE S.B.N. 214392
SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220

*Counsel for Plaintiff*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| VANESSA FLINT, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>UGS CORPORATION and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.  CGC-07-465695<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT FOR: (1) VIOLATION OF LABOR CODE § 510; (2) VIOLATION OF CALIFORNIA LABOR CODE § 226.7; (3) VIOLATION OF CALIFORNIA LABOR CODE §§ 226; (4) LABOR CODE PRIVATE ATTORNEYS GENERAL ACT, LABOR CODE §§ 2698 ET SEQ.; (5) VIOLATION OF BUS. & PROF. CODE §§ 17200 ET SEQ.; AND (6) ACCOUNTING**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vanessa Flint ("Plaintiff") brings this action against UGS Corporation ("UGS") and Does 1-100 (collectively, "Defendants"), on behalf of herself and all others similarly situated, upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record, as follows:

## SUMMARY OF CLAIMS

1.    Plaintiff brings this class action pursuant to Cal. Code of Civ. Proc. § 382 seeking unpaid overtime compensation and interest thereon, wages due for failure to provide rest breaks and

1.

1  meal periods, injunctive and other equitable relief and reasonable attorneys' fees and costs, under

2  Labor Code §§ 218.5, 226, 226.7, 510. 512, 552, 1174, 1194, 1194.5 and 1198 and Code of Civ.

3  Proc. § 1021.5 on behalf of herself and all other persons who are or have been employed by

4  Defendants in the State of California at any time after August 1, 2003, as "Technical Writers," as

5  further defined in paragraph 7 below. Plaintiff, on behalf or herself and the Class Members also

6  seeks to recover penalties authorized by Labor Code §§ 2698 and 2699 (the Labor Code Private

7  Attorneys General Act of 2004), and seeks injunctive relief and restitution of all benefits Defendants

8  have enjoyed from their failure to pay overtime compensation under Business and Professions Code

9  §§ 17200 et seq.

### THE PARTIES

11  1.    Plaintiff Vanessa Flint is a resident of California, who was employed by UGS in

12  California as a Technical Writer during the Class Period.

13  2.    UGS is a corporation organized under the laws of Delaware and has its principal place

14  of business in Plano, Texas. UGS is qualified to and doing business in the State of California. UGS

15  is a computer software company specializing in 3D and Product Lifecycle Management (PLM)

16  software.

17  3.    UGS is. and at all times was, an employer under California law and applicable Industrial

18  Welfare Commission ("IWC") Orders.

19  4.    The true names and capacities (whether individual, corporate, associate, or otherwise) of

20  Defendants Does 1 through 100, inclusive, and each of them, are unknown to Plaintiff, who sues

21  said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that

22  each of the Defendants fictitiously named herein is legally responsible in some actionable manner

23  for the events described herein. and thereby proximately caused the damage to Plaintiff and the

24  members of the Class. Plaintiff will seek leave of Court to amend this Complaint to state the true

25  name(s) and capacities of such fictitiously named Defendants when the same have been ascertained.

26  5.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein,

27  each defendant aided and abetted, and acted in concert with and/or conspired with each and every

28  other defendant to commit the acts complained of herein and to engage in a course of conduct and

the business practices complained of herein.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

2.

**JURISDICTION**

6.    This Court has jurisdiction over Plaintiff's and the Class Members' claims for unpaid overtime wages pursuant to Labor Code §§ 510 and 1194, for wages for Defendants' unlawful denial of meal and rest periods under Labor Code §§ 226.7 and 512, and penalties for failure to provide itemized statements of hours worked and all applicable hourly rates pursuant to Labor Code § 226. This Court also has jurisdiction over Plaintiff's and Class Members' claims for injunctive relief and restitution arising from Defendants' unlawful business practices under Business & Professions Code §§ 17200 et seq. This Court also has jurisdiction over Plaintiff's and the Technical Writers' claims under Labor Code §§ 2698 and 2699 (the Labor Code Private Attorneys General Act of 2004).

**SUBSTANTIVE ALLEGATIONS**

7.    Technical Writers are current or former employees of Defendants in California whose primary job responsibility is to write or edit documents for end-users, installers, administrators and customers of Defendants' products, including employees who write courseware for Defendants' customers. Technical Writers are classified by Defendants as Applications Engineers.

8.    Technical Writers do not have management responsibilities. They do not customarily and regularly direct the work of two or more other employees. They do not have the authority to hire or fire other employees, and they are not responsible for making hiring and firing recommendations. Were they to make such recommendations, the recommendations would not be given any particular weight because of their status as Technical Writers.

9.    Technical Writers do not have duties directly related to the creation or implementation of management policies, or to the general business operations of Defendants.

10.    Technical Writers do not require a license or certification from the State of California or any other governmental entity in order to perform their jobs.

11.    Technical Writers do not perform work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study.

12.    The majority of Technical Writers employed by Defendants during the Class Period did not have an advanced degree beyond a bachelor's degree.

3.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

13.    Defendants did not require that Technical Writers have an advanced degree beyond a bachelor's degree during the Class Period.

14.    Technical Writers do not perform work that is original and creative in character.

15.    Technical Writers do not customarily and regularly exercise discretion and independent judgment. Rather, they follow strict instructions, and they rely on their general intellectual ability and training to perform their work.

16.    Technical Writers are or were salaried employees.

17.    Technical Writers' regular hourly rate of pay is less than $49.77.

18.    Technical Writers regularly work or worked more than eight hours a day and forty hours in a workweek.

19.    Technical Writers have worked on weekends and occasionally on national holidays without being paid any overtime compensation for such work.

20.    During the Class Period, Defendants were aware of the duties performed by Plaintiff and the Class Members. Defendants also were aware that the duties of Plaintiff and the Class Members were inconsistent with exempt status, and that such persons were and are not exempt from California's laws and regulations governing overtime compensation.

21.    Nevertheless, during the Class Period, Defendants have knowingly failed to compensate Plaintiff and the Class Members for work that they performed in excess of forty (40) hours per week or eight (8) hours per day, as required by California Labor Code § 510 and IWC Wage Order 4-2001.

22.    Defendants have also failed to provide Plaintiff and Class Members with semimonthly itemized statements of the total number of hours worked by each and all applicable hourly rates in effect during the pay period, in violation of California Labor Code § 226 and IWC Wage Order 4-2001. Defendants have also failed to provide or require the use, maintenance or submission of time records by Plaintiff and the Class Members as required by California Labor Code § 1174(d). As a result, Defendants have not only failed to pay Class Members the full amount of compensation due, they have also shielded themselves from scrutiny by the Class Members by concealing the magnitude (the full number of hours worked) and the financial impact of their wrongdoing.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

4.

1    23.    In failing to properly compensate Plaintiff and the Class Members for overtime hours

2  worked, Defendants acted maliciously, oppressively, and/or fraudulently, and such despicable

3  conduct designed to maximize the Defendants' economic gain was carried out with the wrongful

4  intention of causing injury to Plaintiff and the Class Members, in willful and conscious disregard of

5  the rights of Plaintiff and the Class Members as established by California law and applicable

6  regulations.

7    24.    Defendants have also consistently and unlawfully denied meal and rest periods to

8  Plaintiff and the Class Members as required by California Labor Code §§ 226.7 and 512 and IWC

9  Wage Order 4-2001 during the Class Period.

10    25.    Defendants have also violated California Labor Code § 552 by causing Class Members

11  to work seven days a week during the Class Period.

12    26. .    The harm caused by Defendants' wrongful actions grossly outweighs any benefit that

13  could be attributed to it.

14    **CLASS ACTION ALLEGATIONS**

15    27.    Plaintiff bring this action as a class action pursuant to Code of Civil Procedure Section

16  382 on behalf of herself and the following Class Members:

17    All persons who, from August 1, 2003 up to the time of judgment, are
      or were (1) employed and/or worked as salaried Technical Writers for
18    Defendants in California and (2) are or were classified as exempt
19    employees and were not paid overtime. Excluded from the Class are
      Defendants, their officers and directors.

20

21    28.    The period between August 1, 2003 and the date of trial or final resolution of this matter

22  is referred to herein as the "Class Period."

23    29.    The Class Members are similarly situated to Plaintiff and to each other, because they all

24  perform similar duties and assignments, and all have been subject to Defendants' common policy

25  and practice of classifying all Technical Writers as exempt from the California overtime laws –

26  while at the same time being assigned to duties inconsistent with exempt status. Like Plaintiff, no

27  member of the Class has been paid overtime compensation in accordance with the California laws

28  identified herein.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

5.

30.    Furthermore, the Class Members were all subject to the same unlawful policy or plan of Defendants as Plaintiff, under which they were classified as exempt from the California overtime laws. Any differences which exist in the job duties of the Technical Writers are not material to their right to overtime compensation pursuant to the California overtime laws.

31.    Plaintiff is currently unaware of the identities of all the Class Members. On information and belief, at least fifty but less than one hundred persons have worked for Defendants as Technical Writers in California during the Class Period and would therefore be members of the Class. For this reason, joinder of all members of the Class would be impracticable.

32.    There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

a.    Whether the duties of Technical Writers are inconsistent with exempt status under California law;

b.    whether Defendants violated Labor Code § 510 and/or IWC Wage Order 4-2001 by failing to provide overtime compensation to Technical Writers who worked in excess of forty (40) hours per week and/or eight (8) hours per day.

c.    Whether Defendants violated Labor Code §§ 226.7 and 512 and/or IWC Wage Order 4-2001 by failing to consistently provide meal and/or rest periods to Technical Writers.

d.    Whether Defendants violated Labor Code § 226 and 1174 and/or IWC Wage Order 4-2001 by failing to keep adequate records of hours worked by Plaintiff and Class Members;

e.    Whether Defendants violated California Labor Code § 552 and/or IWC Wage Order 4-2001 by causing Class Members to work more than six days in seven.

f.    Whether, by the misconduct alleged herein, Defendants have engaged in unfair and/or unlawful business practices; and

g.    Whether, as a result of Defendants' misconduct, Plaintiff and the Class Members are entitled to wages, statutory and other penalties, damages, punitive damages, an accounting and restitution, and injunctive, equitable and other relief.

33.    Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members were subjected to and harmed by Defendants' uniform policy of misclassifying Technical Writers as exempt from overtime compensation in order to avoid having to pay overtime as required

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

6.

1   by California law. Any differences between individual Class Members' job duties are immaterial to

2   the question of whether Technical Writers were or were not correctly classified as exempt under

3   California law. Plaintiff is subject to no unique defenses, as Defendants' policies were uniform

4   throughout California.

5       34.    Plaintiff will fairly and adequately protect the interests of the Class and has retained

6   attorneys experienced in class and employment litigation.

7       35.    Questions of law or fact common to the Class Members predominate over any questions

8   affecting only individual Class Members. All of the facts material to resolving the common legal

9   question of whether exemption from the California overtime laws is appropriate are common to all

10  Class Members. Facts not common to the Class Members are not material to resolving the common

11  legal question of whether Defendants' exempt classification of the Class Members is legally correct.

12  A class action is therefore superior to other available methods for the fair and efficient adjudication

13  of this controversy. A class action is also superior to other available methods for the fair and

14  efficient adjudication for the following reasons:

15      a.   it is economically impractical for Class Members to prosecute individual actions;

16      b.   the Class Members are readily identifiable;

17      c.   prosecution as a class action will eliminate the possibility of repetitious litigation;

18  and

19      d.   a class action will enable claims to be handled in an orderly and expeditious manner;

20  a class action will save time and expense and will ensure uniformity of decisions.

21      36.    The prosecution of separate actions against Defendants under California law would

22  create a risk of inconsistent or varying adjudications with respect to individual Class Members

23  which would establish incompatible standards of conduct for the Defendants. In addition,

24  adjudications with respect to individual Class Members could as a practical matter be dispositive of

25  the interests of the other Class Members not parties to such adjudications, or could substantially

26  impede or impair their ability to protect their interests.

27      37.    Plaintiff does not anticipate any difficulty in the management of this litigation.

28

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

7.

1

## PRIVATE ATTORNEY GENERAL ALLEGATIONS

2     38.    In addition to asserting class action claims, Plaintiff asserts claims as a private attorney

3 general on behalf of all current and former Technical Writers employed by Defendants during the

4 period August 1, 2006 through the present pursuant to Labor Code §§2698 et seq. Defendants have

5 violated various provisions of the Labor Code as alleged herein, and thereby caused harm to all

6 current and former Technical Writers. For each such violation, Defendants owe statutory penalties

7 to be assessed by the Court.

8
9

**FIRST CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME WAGES**
**VIOLATION OF LABOR CODE § 510 AND IWC WAGE ORDER 4-2001**

10     39.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully

11 herein.

12     40.    By their conduct, as set forth herein, Defendants violated California Labor Code § 510,

13 1198 and IWC Wage Order 4-2001 by failing to pay Plaintiff and the Class: (a) time and one-half

14 their regular hourly rates for hours worked in excess of eight hours in a work-day or in excess of

15 forty hours in any workweek or for the first eight hours worked on the seventh day of work in any

16 one workweek; or (b) twice their regular rate of pay for hours worked in excess of twelve hours in

17 any one day or for hours worked in excess of eight hours on any seventh day of work in a workweek

18 during the Class Period.

19     41.    Defendants' violations of California Labor Code §§ 510 and 1198 and IWC Wage Order

20 4-2001 were repeated, willful and intentional.

21     42.    Plaintiff and the Class members have been damaged by said violations of California

22 Labor Code §§ 510 and 1198 and IWC Wage Order 4-2001.

23     43.    Pursuant to California Labor Code § 1194, Defendants are liable to Plaintiff and the

24 Class Members for the full amount of all their unpaid overtime compensation with interest thereon,

25 plus reasonable attorneys' fees and costs.

26     44.    Because Defendants' unlawful classification of the Plaintiff and the Class as exempt

27 from the California overtime laws constituted despicable conduct that was carried out with malice,

28 oppression, or fraud, in willful and conscious disregard for their rights, Plaintiff and the Class are

entitled to exemplary damages to punish the Defendants pursuant to California Civil Code § 3294.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

45. Plaintiff and the Class Members are also entitled to attorneys' fees and costs pursuant to Labor Code §§ 218.5 and 1194.

## SECOND CAUSE OF ACTION
## FAILURE TO PROVIDE MEAL AND REST BREAKS
## VIOLATION OF CALIFORNIA LABOR CODE § 226.7
## AND IWC WAGE ORDER 4-2001

46. Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

47. Defendants have failed to provide Plaintiff and Class Members with a rest break of ten (10) consecutive minutes for each four (4) hour period worked throughout the Class Period.

48. Defendants have failed to provide Plaintiff and Class Members with a meal break of at least thirty (30) minutes for each five (5) hour period worked throughout the Class Period.

49. Plaintiff and the Class Members are entitled to one additional hour of pay at each employee's regular rate of pay for each workday that a rest period was not provided.

50. Plaintiff and the Class Members are also entitled to one additional hour of pay at each employee's regular rate of pay for each workday that a meal break was not provided.

51. Because Defendants' unlawful classification of the Plaintiff and the Class as exempt from the California laws requiring employers to provide meal and rest breaks constituted despicable conduct that was carried out with malice, oppression, or fraud, in willful and conscious disregard for their rights, Plaintiff and the Class Members are entitled to exemplary damages to punish the Defendants pursuant to California Civil Code § 3294.

52. Plaintiff and the Class Members are also entitled to attorneys' fees and costs pursuant to Labor Code § 218.5.

## THIRD CAUSE OF ACTION
## FAILURE TO KEEP RECORDS OF HOURS WORKED
## VIOLATION OF CALIFORNIA LABOR CODE §§ 226
## AND IWC WAGE ORDER 4-2001

53. Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all preceding paragraphs.

54. Defendants have failed to furnish Plaintiff and Class Members, semimonthly or at the time of each payment of wages, an accurate, itemized statement in writing showing gross and net

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

9.

1   wages earned, total hours worked and the applicable hourly rates in effect and the corresponding

2   number of hours worked at each hourly rate during the Class Period.

3       55.    Defendants' failure was knowing and intentional.

4       56.    Defendants' failure has injured Plaintiff and Class Members by depriving them of hour,

5   wage and earnings information to which they are entitled. causing them difficulty and expense in

6   attempting to reconstruct time and pay records. not to be paid wages to which they are entitled, to

7   rely on inaccurate earnings statements in dealings with third parties, to be unable to exercise their

8   right under Labor Code § 226(b) to review itemized wage statement information, and to be deceived

9   regarding their entitlement to overtime and meal and rest period wages.

10      57.    Plaintiff and Class Members seek actual damages, penalties, attorneys' fees and costs

11  pursuant to Labor Code § 226(e), and injunctive relief and attorneys' fees and costs pursuant to

12  Labor Code § 226(g).

### FOURTH CAUSE OF ACTION
### UNFAIR, UNLAWFUL AND FRAUDULENT BUSINESS PRACTICES IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §§ 17200, *ET. SEQ.*

15      58.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully

16  herein.

17      59.    Defendants have engaged in unfair. unlawful. and fraudulent business practices as set

18  forth above during the Class Period.

19      60.    By engaging in the above-described acts and practices. Defendants have committed one

20  or more acts of unfair competition within the meaning of Bus. & Prof. Code §§17200, *et seq.*

21      61.    Plaintiff, on behalf of herself and the Class Members, seeks an order of this Court

22  awarding restitution, injunctive relief and all other relief allowed under Bus. & Prof. Code §§17200

23  *et seq.*, plus interest, attorneys' fees and costs pursuant to, *inter alia*, Code of Civ. Proc. §1021.5.

### FIFTH CAUSE OF ACTION
### LABOR CODE PRIVATE ATTORNEYS GENERAL ACT LABOR CODE §§ 2698 *ET SEQ.*

26      62.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully

27  herein.

28

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

63.    Plaintiff is an aggrieved employee within the meaning of Labor Code § 2699 and brings this claim on behalf of herself and other current or former employees of UGS who were employed as Technical Writers during the period August 1, 2006 through the present.

64.    Plaintiff has given written notice by certified mail to the Labor and Workforce Development Agency and UGS of the specific provisions of the Labor Code that UGS is alleged to have been violated, including the facts and theories to support the alleged violation. A copy of this notice is attached hereto as Exhibit A.

65.    Defendants have violated Labor Code § 510 and/or related IWC Wage Orders by failing to provide overtime compensation to Technical Writers who worked in excess of forty (40) hours per week and/or eight (8) hours per day.

66.    Defendants have violated Labor Code §§ 226.7 and 512 and related IWC Wage Orders by failing to consistently provide meal and/or rest periods to Technical Writers.

67.    Defendants have violated Labor Code § 226 and 1174 and/or related IWC Wage Orders by failing to keep adequate records of hours worked by Technical Writers.

68.    Defendants have violated IWC Wage Order 4-2001 by failing to maintain adequate records of Technical Writers' meal periods.

69.    Defendants have violated California Labor Code § 552 and/or related IWC Wage Orders by causing Technical Writers to work more than six days in seven.

70.    Defendants' conduct as set forth herein has caused injury to the Technical Writers.

71    For each such violation, Plaintiff seeks civil penalties of one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation or such other civil penalties as are permitted by law.

72.    Plaintiff also seeks an award of reasonable attorneys' fees and costs pursuant to Labor Code § 2699(g).

### SIXTH CAUSE OF ACTION
### ACCOUNTING

73.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

11.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1    74.    As alleged above Plaintiff and the Class Members are owed wages which equal the sum

2  of overtime compensation not paid by Defendants to them, plus one additional hour of pay at their

3  regular rate of compensation for each work today they were not provided a meal as provided by law,

4  plus one additional hour of pay for each work day they were not provided a rest period as provided

5  by law, statutory interest on such compensation, plus civil penalties.

6    75.    Plaintiff does not know the precise amount of compensation due to Plaintiff and each

7  Class Member or the precise amount of penalties due.

8    76.    Upon information and belief, Plaintiff alleges that Defendants possess records from

9  which the amount of compensation due and owing to Plaintiff and each Class Member can be

10  determined.

11    77.    Upon information and belief, Plaintiff alleges that Defendants possess records from

12  which the amount of penalties due and owing to Plaintiff and each Class Member can be

13  determined.

14    78.    Because it is impossible for the Plaintiff to determine the exact amount of money due to

15  Plaintiff and the Class Members without a detailed review of Defendants' books and records and/or

16  discovery in this action, Plaintiff seeks, among other things, an accounting of books and records in

17  the possession of Defendants and/or the appointment of a receiver to determine the compensation

18  owed to Plaintiff and Class Members.

19    **PRAYER FOR RELIEF**

20    WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, and as a private

21  attorney general prays for judgment against Defendants as follows:

22    A.    An order certifying this case as a class action and appointing Plaintiff and her counsel to

23  represent the Class Members;

24    B.    A judgment awarding Plaintiff and the Class Members compensatory damages in an

25  amount to be proven at trial, together with prejudgment interest at the maximum rate allowed by

26  law;

27    C.    A judgment awarding Plaintiff and the Class Members wages in an amount to be proven

28  at trial, together with prejudgment interest at the maximum rate allowed by law;

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

12.

1       D.    A judgment awarding Plaintiff and the Class Members statutory penalties in an amount

2   to be proven at trial;

3       E.    An order requiring Defendants to immediately cease their wrongful conduct as set forth

4   above; enjoining Defendants from continuing to improperly classify Technical Writers as exempt

5   from California overtime regulations and failing to pay such employees overtime wages and wages

6   for meal and rest breaks;

7       F.    Restitution and disgorgement of all amounts obtained by Defendants as a result of their

8   misconduct, together with interest thereon from the date of payment, to Plaintiff and the Class

9   Members;

10      G.    An accounting of books and records in the possession of Defendants and/or the appoint-

11  ment of a receiver to determine the compensation and statutory penalties owed to Plaintiff and Class

12  members;

13      H.    Reasonable attorneys' fees and the costs of this action as permitted by law, including but

14  not limited to California Labor Code §§ 218.5, 226, 1194 and 2699 and Code of Civ. Proc. §1021.5;

15      I.    Punitive damages;

16      J.    Statutory pre-judgment interest; and

17      K.    Such other relief as this Court may deem just and proper.

18  **JURY DEMAND**

19      Plaintiff demands a trial by jury on all causes of action so triable.

20

21

22  Dated: August 6, 2007             SCHUBERT & REED LLP

23                        Three Embarcadero Center

24                        Suite 1650

25                        San Francisco, CA 94111

26               By:                      
                      Robert C. Schubert

27

28

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

13.

ROBERT C. SCHUBERT S.B.N. 62684
JUDEN JUSTICE REED S.B.N. 153748
MIRANDA P. KOLBE S.B.N. 214392
SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220

*Counsel for Plaintiff*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| VANESSA FLINT, Individually and On Behalf of All Others Similarly Situated, | Case No. CGC-07-465695 |
| Plaintiff, | **CLASS ACTION** |
| v. | **VERIFICATION OF FIRST AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT** |
| UGS CORPORATION and DOES 1 through 100, inclusive, | **JURY TRIAL DEMANDED** |
| Defendants. | |

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1.

I, Robert C. Schubert, hereby declare:

1.      I am counsel for plaintiff Vanessa Flint in the captioned matter. Plaintiff is absent from the county where this action is pending and from the county in which I maintain my office, and for that reason I am making this verification for and on her behalf.

2.      I have read the foregoing FIRST AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT and know its contents. I am informed and believe and on that ground allege that the matters stated therein are true and correct.


        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 6th of August, 2007, in San Francisco, California.


_____
Robert C. Schubert

2.

# EXHIBIT B



United States District Court, Central District
of California

# General Order

Order Number: Description:                                    Date Filed:
349          Allocation of Cases among the Divisions          10/25/1994

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| In the Matter of | ) GENERAL ORDER NO. 349 |
|---|---|
| | ) |
| **METHOD OF ALLOCATING CASES** | ) (SUPERSEDES GENERAL ORDERS 310-B |
| **AMONG THE DIVISIONS OF THE** | ) AND 310D) |
| **CENTRAL DISTRICT COURT OF** | ) |
| **CALIFORNIA** | ) |

WHEREAS, United States Code 28 §84(c) divides the Central District of California into three (3) Divisions, as follows:

- the Western Division comprised of Los Angeles, San Luis Obispo, Santa Barbara and Ventura Counties,
- the Southern Division comprised of Orange County, and
- the Eastern Division comprised of Riverside and San Bernardino Counties,

IT IS HEREBY ORDERED that the following shall govern the method of allocating cases among the Western, Southern and Eastern Divisions:

1. Assignment of Civil Cases to the Southern Division

      A. (i) Except as provided in paragraph (B), a civil case shall be assigned to the Southern Division if:

           (a) each plaintiff resides in the Southern Division or in a place outside the remainder of the Central District of California, and

           (b) each named defendant resides in the Southern Division or in a place outside the remainder of the Central District of California, and

           (c) all claims arose in the Southern Division or in a place outside the remainder of the Central District of California.

           (ii) Except as provided in paragraph B., a civil case in which the United States or any agency thereof is a defendant, and in which all plaintiffs reside in the Southern Division shall be assigned to the Southern Division. In addition, a civil case in which the United States or any agency thereof is a plaintiff, and in which all defendants

reside in the Southern Division shall be assigned to the Southern Division.

(iii) With the exception of those cases assigned to the Eastern Division pursuant to paragraph 2, all other civil cases shall be assigned to the Western Division.

B. (i) In order to balance the number of civil cases assigned to the judicial officers of the Western, Southern and Eastern Divisions, there shall be determined a maximum number of civil cases allowed for assignment to the Southern Division for a given period. This predetermined number shall be adjusted as needed.

(ii) Once the predetermined number of civil cases has been assigned to the Southern Division for the given period, all additional civil cases filed during that period shall be assigned to the Western Division.

(iii) If the actual number of civil cases assigned to the Southern Division for the given period is less than the predetermined number of cases allowed for assignment, the difference shall be added to the next period's allowance of Southern Division civil cases.

2. Assignment of Civil Cases to the Eastern Division

A. (i) Except as provided in paragraph B, a civil case shall be assigned to the Eastern Division if:

(a) each plaintiff resides in the Eastern Division or in a place outside the remainder of the Central District of California, and

(b) each named defendant resides in the Eastern Division or in a place outside the remainder of the Central District of California, and

(c) all claims arose in the Eastern Division or in a place outside the remainder of the Central District of California.

(ii) Except as provided in paragraph B., a civil case in which the United States or any agency thereof is a defendant, and in which all plaintiffs reside in Eastern Division shall be assigned to the Eastern Division. In addition, a civil case in which the United States or any agency thereof is a plaintiff, and in which all defendants reside in the Eastern Division shall be assigned to the Eastern Division.

(iii) With the exception of those cases assigned to the Southern Division pursuant to paragraph 1, all other civil cases shall be assigned to the Western Division.

B. (i) In order to balance the number of civil cases assigned to the judicial officers of the Western, Southern and Eastern Divisions, there shall be determined a maximum number of civil cases allowed for assignment to the Eastern Division for a given period. This predetermined number shall be adjusted as needed.

(ii) Once the predetermined number of civil cases has been assigned to the Eastern Division for the given period, all additional civil cases filed during that period shall be assigned to the Western Division.

(iii) If the actual number of civil cases assigned to the Eastern Division for the given period is less than the predetermined number of cases allowed for assignment, the difference shall be added to the next period's allowance of Eastern Division civil cases.

3. <u>Assignment of Criminal Cases to the Southern Division</u>

A. A criminal indictment or information may be assigned to the Southern Division if the majority of the crimes charged are alleged to have been committed within the Southern Division.

B. (i) In order to balance the number of criminal cases assigned to the judicial officers of the Western, Southern and Eastern Divisions, there shall be determined a maximum number of criminal cases allowed for assignment to the Southern Division for a given period. This predetermined number shall be adjusted as needed.

(ii) Once the predetermined number of criminal cases has been assigned to the Southern Division for the given period, all additional criminal cases filed during that period shall be assigned to the Western Division.

(iii) If the actual number of criminal cases assigned to the Southern Division for the given period is less than the predetermined number of cases allowed for assignment, the difference shall be added to the next period's allowance of Southern Division criminal cases.

C. All guilty pleas pursuant to Federal Rule 20 for arrests within the Southern Division shall be assigned to the Southern Division.

D. For any transfer of a case to or from any Division that requires a change of the individual attorney of record as approved by the transferor judge, there shall be a new minimum 30-day period for trial preparation which shall run from the day of the order of transfer, unless waived by the parties.

4. <u>Assignment of Criminal Cases to the Eastern Division</u>

The initial United States District Judge assigned to the Eastern Division shall receive Western Division criminal cases until such time he or she is permanently located in the Eastern Division. Once the initial United States District Judge is permanently located in the Eastern Division, the assignment of criminal cases shall be assigned to the Eastern Division as follows:

A. A criminal indictment or information may be assigned to the Eastern Division if the majority of the crimes charged are alleged to have been committed within the Eastern Division.

B. (i) In order to balance the number of criminal cases assigned to the judicial officers of the Western, Southern and Eastern Divisions, there shall be determined a maximum number of criminal cases allowed for assignment to the Eastern Division for a given period. This predetermined number shall be adjusted as needed.

(ii) Once the predetermined number of criminal cases has been assigned to the Eastern Division for the given period, all additional criminal cases filed during that period shall be assigned to the Western Division.

(iii) If the actual number of criminal cases assigned to the Eastern Division for the given period is less than the predetermined number of cases allowed for assignment, the difference shall be added to the next period's allowance of Eastern Division criminal

cases.

      C. All guilty pleas pursuant to Federal Rule 20 for arrests within the Eastern Division shall be assigned to the Eastern Division.

      D. For any transfer of a case to or from any Division that requires a change of the individual attorney of record as approved by the transferor judge, there shall be a new minimum 30-day period for trial preparation which shall run from the day of the order of transfer, unless waived by the parties.

    5. <u>Assignment of Bankruptcy Matters to the Southern Division</u>

      A. All bankruptcy appeals, referrals and contempt proceedings from the Bankruptcy Court in the Southern Division shall be assigned to the Southern Division.

      B. All bankruptcy matters that have been withdrawn to the district court by the Southern Division Bankruptcy Duty Judge shall be assigned to the Southern Division.

    6. <u>Assignment of Bankruptcy Matters to the Eastern Division</u>

      A. All bankruptcy appeals, referrals and contempt proceedings from the Bankruptcy Court in the Eastern Division shall be assigned to the Eastern Division.

      B. All bankruptcy matters that have been withdrawn to the district court by the Eastern Division Bankruptcy Duty Judge shall be assigned to the Eastern Division.

    7. <u>Assignment of Other Matters</u>

      A. <u>Notices of Removal</u> - Removed cases shall be assigned to the appropriate Division of the Central District Court of California pursuant to the civil case assignment procedures set forth in paragraphs 1 and 2 of this Order.

      B. <u>Habeas Corpus Petitions and § 2255 Motions</u>

        (i) Non-death penalty habeas corpus petitions where the prisoner was convicted in the Southern Division shall be assigned to the Southern Division.

        (ii) Non-death penalty habeas corpus petitions where the prisoner was convicted in the Eastern Division shall be assigned to the Eastern Division.

        (iii) Habeas corpus cases involving the death penalty shall be assigned in accordance with the general procedures for those cases.

      (iv) Motions under §2255 shall be assigned as provided in General Order 224.

      C. <u>Naturalization</u> - All naturalization and immigration matters shall be primarily assigned to the Western Division.

      D. <u>Prisoner Civil rights Cases</u> - All prisoner civil rights cases shall be assigned to the Western Division.

      E. <u>Emergency Filings</u> - All emergency filings shall be filed in the Western

Division. If the case would otherwise have been assigned to another Division, it shall be so assigned the following business day.

8. Consent to Proceed Before a U.S. Magistrate Judge

Regardless of where a civil case is assigned, the parties may consent to proceed before a magistrate judge pursuant to General Order 194-G, and may stipulate to a specific magistrate judge regardless of where that magistrate judge is assigned. If no specific magistrate judge is requested by the parties, one shall be selected at random from an assignment wheel which shall contain the names of all full-time magistrate judges regardless of where assigned.

This General Order shall be effective October 25, 1994, and shall supersede General Orders 310-B and 310-D previously filed with the Court.



United States District Court, Central District
of California

# General Order

**Order Number:** **Description:**                                    **Date Filed:**
349-A        Method of Allocating Cases among the Divisions of the  01/30/1995
             Central District Court of California

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

**In the Matter of**                          ) GENERAL ORDER NO. **349-A**
                                              )
**IN THE MATTER OF METHOD OF**                )
**ALLOCATING CASES AMONG THE**                )
**DIVISIONS OF THE CENTRAL**                  )
**DISTRICT COURT OF CALIFORNIA**              )

WHEREAS, in order to bring about an equal distribution of civil and criminal cases, the Court
will periodically review and modify the method of allocating cases among the Divisions, and[

WHEREAS, it now appears necessary to modify the civil and criminal case assignment rules
to keep the caseload per judge in the Southern and Eastern Divisions in relative proximity to
the caseloads of judges in the Western Division of the Court,

IT IS HEREBY ORDERED that General Order No. 349 be amended as follows:

1. Assignment of Civil Cases to the Southern Division
   A.
      i. Except as provided in paragraph (B), a civil case shall be assigned to the
         Southern Division if two of the following three venue components as
         described below are within the Southern Division:
         a. the majority of all plaintiffs reside in the Southern Division or in a
            place outside the remainder of the Central District of California with
            an equal number deemed to be a Southern Division majority;
         b. the majority of all named defendants reside in the Southern Division
            or in a place outside the remainder of the Central District of
            California with an equal number deemed to be a Southern Division
            majority;
         c. the majority of all claims arose in the Southern Division or in a place
            outside the remainder of the Central District of California with an
            equal number deemed to be a Southern Division majority.

      ii. Except as provided in paragraph B., a civil case in which the United States
          or any agency thereof is a defendant, and in which the majority of all
          plaintiffs reside in the Southern Division shall be assigned to the Southern
          Division. In addition, a civil case in which the United States or any agency
          thereof is a plaintiff, and in which the majority of all defendants reside in

the Southern Division shall be assigned to the Southern Division.

   iii.  With the exception of those cases assigned to the Eastern Division pursuant to paragraph 2, all other civil cases shall be assigned to the Western Division.

B.

   i.  In order to balance the number of civil cases assigned to the judicial officers of the Western, Southern and Eastern Divisions, there shall be determined a maximum number of civil cases allowed for assignment to the Southern Division for a given period. This predetermined number shall be adjusted as needed.

   ii.  Once the predetermined number of civil cases has been assigned to the Southern Division for the given period, all additional civil cases filed during that period shall be assigned to the Western Division.

   iii.  If the actual number of civil cases assigned to the Southern Division for the given period is less than the predetermined number of cases allowed for assignment, the difference shall be added to the next period's allowance of Southern Division civil cases.

2. <u>Assignment of Civil Cases to the Eastern Division</u>

  A.

   i.  Except as provided in paragraph B, a civil case shall be assigned to the Eastern Division if:

     a.  each plaintiff resides in the Eastern Division or in a place outside the remainder of the Central District of California, and

     b.  each named defendant resides in the Eastern Division or in a place outside the remainder of the Central District of California, and

     c.  all claims arose in the Eastern Division or in a place outside the remainder of the Central District of California.

   ii.  Except as provided in paragraph B., a civil case in which the United States or any agency thereof is a defendant, and in which all plaintiffs reside in Eastern Division shall be assigned to the Eastern Division. In addition, a civil case in which the United States or any agency thereof is a plaintiff, and in which all defendants reside in the Eastern Division shall be assigned to the Eastern Division.

   iii.  With the exception of those cases assigned to the Southern Division pursuant to paragraph 1, all other civil cases shall be assigned to the Western Division.

  B.

   i.  In order to balance the number of civil cases assigned to the judicial officers of the Western, Southern and Eastern Divisions, there shall be determined a maximum number of civil cases allowed for assignment to the Eastern Division for a given period. This predetermined number shall be adjusted as needed.

   ii.  Once the predetermined number of civil cases has been assigned to the Eastern Division for the given period, all additional civil cases filed during that period shall be assigned to the Western Division.

   iii.  If the actual number of civil cases assigned to the Eastern Division for the given period is less than the predetermined number of cases allowed for assignment, the difference shall be added to the next period's allowance of Eastern Division civil cases.

3. <u>Assignment of Criminal Cases to the Southern Division</u>

A. A criminal indictment or information may be assigned to the Southern Division if at least one of the crimes charged, or any part thereof, is alleged to have been committed within the Southern Division.

B.

   i. In order to balance the number of criminal cases assigned to the judicial officers of the Western, Southern and Eastern Divisions, there shall be determined a maximum number of criminal cases allowed for assignment to the Southern Division for a given period. This predetermined number shall be adjusted as needed.

   ii. Once the predetermined number of criminal cases has been assigned to the Southern Division for the given period, all additional criminal cases filed during that period shall be assigned to the Western Division.

   iii. If the actual number of criminal cases assigned to the Southern Division for the given period is less than the predetermined number of cases allowed for assignment, the difference shall be added to the next period's allowance of Southern Division criminal cases.

C. All guilty pleas pursuant to Federal Rule 20 for arrests within the Southern Division shall be assigned to the Southern Division.

D. For any transfer of a case to or from any Division that requires a change of the individual attorney of record as approved by the transferor judge, there shall be a new minimum 30-day period for trial preparation which shall run from the day of the order of transfer, unless waived by the parties.

5. Assignment of Criminal Cases to the Eastern Division

Upon determination by the Chief Judge, the United States District Judge assigned to the Eastern Division may receive Eastern Division criminal cases prior to such time he or she is permanently located in the Eastern Division. The assignment of criminal cases shall be assigned to the Eastern Division as follows:

A. A criminal indictment or information may be assigned to the Eastern Division if all of the crimes charged are alleged to have been committed within the Eastern Division.

B.

   i. In order to balance the number of criminal cases assigned to the judicial officers of the Western, Southern and Eastern Divisions, there shall be determined a maximum number of criminal cases allowed for assignment to the Eastern Division for a given period. This predetermined number shall be adjusted as needed.

   ii. Once the predetermined number of criminal cases has been assigned to the Eastern Division for the given period, all additional criminal cases filed during that period shall be assigned to the Western Division.

   iii. If the actual number of criminal cases assigned to the Eastern Division for the given period is less than the predetermined number of cases allowed for assignment, the difference shall be added to the next period's allowance of Eastern Division criminal cases.

C. All guilty pleas pursuant to Federal Rule 20 for arrests within the Eastern Division shall be assigned to the Eastern Division.

D. For any transfer of a case to or from any Division that requires a change of the individual attorney of record as approved by the transferor judge, there shall be a new minimum 30-day period for trial preparation which shall run from the day of the order of transfer, unless waived by the parties."

# EXHIBIT C

*1999 U.S. Dist. LEXIS 12659, \**

LISA **JARVIS**, Plaintiff, v. **MARIETTA** CORPORATION, and DOES 1 to 50, Defendants.

No. C 98-4951 MJJ

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1999 U.S. Dist. LEXIS 12659

August 12, 1999, Decided
August 12, 1999, Filed; August 16, 1999, Entered in Civil Docket

**DISPOSITION: [\*1]** Defendants' motion to transfer venue to the Northern District of New York GRANTED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant former employer filed a motion to transfer venue, pursuant to 28 U.S.C.S. § 1404, of plaintiff former employee's action to recover for breach of contract, wrongful termination, and sexual harassment.

**OVERVIEW:** Plaintiff former employee sued defendant former employer alleging breach of contract, wrongful termination, and sexual harassment. The court granted defendant former employer's motion to transfer venue, pursuant to 28 U.S.C.S. § 1404. Defendant was able to overcome the strong presumption in favor of plaintiff's choice of forum by showing that the convenience of the parties and witnesses and the interest of justice weighed heavily in favor of a transfer to a district where the action might have been brought. Despite California's interest in protecting plaintiff as a citizen, all of the specific actionable events at issue occurred outside the state, predominantly in New York. Defendant's principle place of business was located in New York and the expense of sending a significant number of its employee witnesses to another state for purposes of trial and the relative access to important documentary evidence would have been burdensome. Plaintiff was already defending a suit in New York so convenience of her counsel was not a relevant factor. Further, a New York court would have been more familiar with the controlling state law.

**OUTCOME:** The court granted defendant former employer's motion to transfer venue of plaintiff former employee's action for breach of contract, wrongful termination, and sexual harassment because defendant was able to overcome the presumption in favor of plaintiff's choice of forum with evidence that the convenience of the parties and witnesses and the interest of justice supported a transfer.

**CORE TERMS:** venue, convenience, reside, choice of forum, interests of justice, important factor, consolidation, applicable law, local interest, disclosure, congestion, inconvenience, termination, feasibility, sexual, human resources, moving party, personal jurisdiction, operative facts, headquarters, familiarity, harassment, non-party, resident, weighs, ease, sexual harassment, defending, customer, state law

**LEXISNEXIS® HEADNOTES**                                      ⊟**Hide**

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers

*HN1* Venue is governed by 28 U.S.C.S. § 1404(a). 28 U.S.C.S. § 1404(a) provides that for the convenience of the parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where the action might have been brought. The purpose of the section is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. Under 28 U.S.C.S. § 1404(a), the moving party has the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Venue > Motions to Transfer > Choice of Forum 🗔
Civil Procedure > Venue > Motions to Transfer > Convenience of Parties 🗔
Civil Procedure > Venue > Motions to Transfer > Interests of Justice 🗔

HN2⬆️ In order to support a motion to transfer venue, the moving party must show that the forum they seek transfer is a forum in which the action originally might have been brought. In addition, the transfer must be for the convenience of the parties and witnesses and in the interests of justice. The factors to be considered in making this determination include: 1) plaintiff's choice of forum, 2) convenience of the parties, 3) convenience of the witnesses, 4) ease of access to the evidence, 5) familiarity of each forum with the applicable law, 6) feasibility of consolidation of other claims, 7) any local interest in the controversy, and 8) the relative court congestion and time of trial in each forum. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview 🗔
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 🗔
Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🗔

HN3⬆️ Transfer under 28 U.S.C.S. § 1404(a) is limited to courts where the action might have been brought. The transferee court must have had complete personal jurisdiction over defendants, subject matter jurisdiction over the claim, and proper venue had the claim originally been brought in that court. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🗔
Civil Procedure > Venue > Motions to Transfer > Choice of Forum 🗔

HN4⬆️ In considering motions to transfer venue, there is a strong presumption in favor of plaintiff's choice of forum. Therefore, there is a heavy burden on the defendant to overcome this presumption and demonstrate that the balance of inconveniences substantially weighs in favor of transfer. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🗔

HN5⬆️ While the plaintiff's choice of forum is to be given great weight, it is not the final word. In determining the weight to be given to this choice, consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter, the plaintiff's choice is entitled to only minimal consideration. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🗔

HN6⬆️ Convenience of counsel is not a relevant factor in determining whether transfer of venue under 28 U.S.C.S. § 1404(a) is proper. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🗔

HN7⬆️ One of the most important factors in determining whether to grant a motion to transfer is the convenience of the witnesses. To demonstrate inconvenience, the moving party should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action. The court considers not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🗔

HN8✦Convenience of non-party witnesses, rather than of employee witnesses, is a more important factor and therefore afforded greater weight.  More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🗐
HN9✦Absent any other grounds for transfer, the fact that records are located in a particular district is not itself sufficient to support a motion for transfer. However, where the location of the evidence is supported by other factors in favor of transfer, the relative ease of access to proof is an important factor to be considered in deciding whether to grant a motion to transfer under 28 U.S.C.S. § 1404.  More Like This Headnote |
*Shepardize: Restrict By Headnote*

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🗐
Civil Procedure > Federal & State Interrelationships > Choice of Law > Forum & Place 🗐
HN10✦An important factor in determining whether transfer of venue is warranted is the interest of having the trial in a forum that is familiar with the law. A change of venue under 28 U.S.C.S. § 1404(a) generally should be, with respect to state law, but a change of courtrooms. Therefore, a transferee court is obligated to apply the applicable law that would govern the transferor court.  More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers 🗐
HN11✦The feasibility of consolidation of claims is also a factor for the court to consider in determining whether to allow a transfer of venue motion under 28 U.S.C.S. § 1404 (a).  More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🗐
HN12✦Another important consideration in granting a motion to transfer venue is the local interest in having local controversies decided at home.  More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🗐
HN13✦An increasingly important factor in determining transfer of venue motions involves the consideration of average trial times and court congestion.  More Like This Headnote

**COUNSEL:** For LISA JARVIS, Plaintiff: Maurice Moyal, Concord, CA.

For MARIETTA CORPORATION, defendant: Robert V. Kuenzel, San Rafael, CA.

**JUDGES:** MARTIN J. JENKINS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MARTIN J. JENKINS

**OPINION**

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE**

**INTRODUCTION**

Before the Court is Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a). After reviewing the pleadings, the Court finds that despite the presumption in favor of a plaintiff's choice of venue, the convenience of the parties and witnesses, and the interests of justice warrant transfer. Therefore, defendant's motion to transfer venue to the Northern District of New York is GRANTED.

**FACTUAL BACKGROUND**

This breach of contract, wrongful termination, and sexual harassment case was originally filed in the Contra Costa Superior Court on November 2, 1998 by Plaintiff Lisa Jarvis against her former employer, Marietta Corporation.  ⌄On December 31, 1998, this action was removed to this Court based on diversity and because the amount in controversy exceeded $ 75,000. On July 28, 1998, three **[*2]** months before this action was filed, Marietta filed a complaint against Jarvis for alleged

breach of a confidentiality agreement in the New York State Supreme Court for Cortland County (New York Action). In that action, Marietta alleged that Jarvis misappropriated information upon her resignation for her own use as well as for the use of her new employer, one of Marietta's competitor's. Marietta claimed that as a result of Jarvis' conduct it has already lost one customer and has had to offer reductions to other customers in order to keep their business. Jarvis has answered the complaint and is currently defending that action.

Here, Jarvis alleges five causes of action, including termination in violation of public policy, breach of implied covenant of continued employment, breach of the implied covenant of good faith and fair dealing, sexual harassment, and intentional infliction of emotional distress. Jarvis claims that her supervisor, Marietta's Vice President Roger H. Austin, made sexual advances and directed sexual innuendoes towards her on various occasions. Plaintiff also alleges that because of her failure to submit to his advances, and because Austin heard that Plaintiff had **[*3]** allegedly complained about him to the Director of Marietta's Human Resources Department, Gail Sechrist, Austin retaliated against Jarvis.

Austin allegedly retaliated by criticizing Jarvis' performance and competence, by causing her to be humiliated in front of the company's president at a sales meeting in Las Vegas because of his failure to warn her to be prepared for that meeting, and by causing Jarvis to be absent from a mandatory meeting in New York by failing to inform her that attendance was mandatory. Plaintiff claims that because of these actions, she was faced with a hostile work environment which led to her eventual resignation form the company on April 14, 1998.

Marietta is incorporated in New York, with its principal place of business, corporate headquarters, and its main production warehouse in Cortland, New York. Marietta claims it has never had more than four employees in California, and those employees worked out of their homes as sales representatives territory managers, or regional managers. Marietta has never had any offices within California. Plaintiff was interviewed and hired by the New York office as an at-will employee under New York state law. Plaintiff received **[*4]** both her pay and benefits from New York, and all of the terms and conditions of her employment were governed by New York law. Plaintiff also received her customer service, design, pricing, marketing, and other support from the Company's New York offices. Plaintiff resides within the Northern District of California, and worked out of her home during her employment with Marietta.

As discussed below, the majority of documents concerning Jarvis' employment, performance and sales at Marietta, including human resources information and financial records, are located at Marietta's New York headquarters. Further, of the witnesses identified in the parties' initial disclosures, a majority are located either in New York, the eastern United States or Canada. Only five witnesses, including Jarvis, reside in the state of California. Finally, many of the witnesses provided by Defendant are current Marietta employees.

## ANALYSIS

### I. Legal Standard

*HN1*⊕Venue is governed by 28 U.S.C. § 1404(a). Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district **[*5]** or division where the action might have been brought." 28 U.S.C. § 1404(a) (1998). The purpose of section is to "prevent the waste of 'time energy and money' and to 'protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)). Under section 1404(a), the moving party has the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981).

*HN2*⊕In order to support a motion to transfer venue, the moving party must show that the forum to which they seek transfer is a forum in which the action originally might have been brought. *See Hoffman v. Blaski*, 363 U.S. 335, 344, 4 L. Ed. 2d 1254, 80 S. Ct. 1084 (1960). In **[*6]** addition, the transfer must be for the convenience of the parties and witnesses and in the interests of justice. The courts in this Circuit have set forth several factors to be considered in making this determination. These factors include 1) plaintiff's choice of forum, 2) convenience of the parties, 3)

convenience of the witnesses, 4) ease of access to the evidence, 5) familiarity of each forum with the applicable law, 6) feasibility of consolidation of other claims, 7) any local interest in the controversy, and 8) the relative court congestion and time of trial in each forum. See _Decker Coal_, 805 F.2d at 843, _Linear Technology Corp. v. Analog Devices, Inc._, 1995 U.S. Dist. LEXIS 4548, 1995 WL 225672, *1 (N.D. Cal. 1995); _Teknekron Software Systems, Inc. v. Cornell University_, 1993 WL 215024, *7 (N.D. Cal. 1993); _University of California v. Eli Lilly & Co._, 21 U.S.P.Q.2D (BNA) 1201, 1207 (N.D. Cal. 1991).

## II. The "Might Have Been Brought" Standard

HN3⚡Transfer under section 1404(a) is limited to courts where the action "might have been brought." See _Hoffman_, 363 U.S. at 344; _A.J. Indus., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal._, 503 F.2d 384, 386 (9th Cir. 1974). [*7] The transferee court must have had complete personal jurisdiction over defendants, subject matter jurisdiction over the claim, and proper venue had the claim originally been brought in that court. See _Hoffman_, 363 U.S. at 343-44. Here, it is undisputed that the Northern District of New York satisfies all three of these requirements.

The Northern District of New York has proper personal jurisdiction over Marietta because it is a company incorporated in New York. Further, it has proper subject matter jurisdiction over the claim based on diversity, and because the amount in dispute exceeds $ 75,000. Finally, venue is proper pursuant to 28 U.S.C. § 1391(c) for corporations in any district in which a court has proper personal jurisdiction over that corporation. Therefore, since the action "might have been brought" in the Northern District of New York, we now turn to a consideration of the convenience and justice factors at issue in this case.

## III. Convenience Factors

## A. Plaintiff's Choice of Forum

HN4⚡In considering motions to transfer venue, there is a "strong presumption in favor of plaintiff's choice of forum." _Piper Aircraft_, 454 U.S. at 255. [*8]  Therefore, there is a heavy burden on Defendant to overcome this presumption and demonstrate that the balance of inconveniences substantially weighs in favor of transfer. See _Decker Coal_, 805 F.2d at 843 (9th Cir. 1986).

HN5⚡While Plaintiff's choice of forum is to be given great weight, it "is not the final word" _Pacific Car and Foundry Co. v. Pence_, 403 F.2d 949, 954 (9th Cir. 1968). In determining the weight to be given to this choice, "consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter, the plaintiff's choice is entitled to only minimal consideration." _Id._ [1]

### FOOTNOTES

[1] Jarvis' assertion that harassment took place in many different areas in addition to New York is unsupported by any competent evidence and is therefore stricken.

[*9]  Beyond any contacts Plaintiff may have with the Northern District of California as a resident, there is not competent evidence that establishes that this forum has a "particular interest" in the matter at issue. While California does have an interest in protecting its citizens, all of the specific actionable events at issue here happened outside of California, and predominantly occurred in New York. Furthermore, it seems that Defendant's only contact with California has been with the four individuals it has employed within the state. However, as previously mentioned, the terms and conditions of their employment are governed pursuant to New York law.

Finally, Jarvis claims that because California is her residence, her choice of forum should be given greater weight. However, Jarvis cites no authority within this circuit to support this contention. Further, Jarvis' reliance on _Dwyer_ seems to further diminish the strength of her argument, since it states that a plaintiff's choice of forum should be given less weight when it is not "the place where the operative facts of the action occurred." See _Dwyer, 853 F. Supp. 690 at 694_; _Teknekron_, 1993 WL 215024, [*10]  *7 (plaintiff's choice of forum, although plaintiff is a resident of that forum, is

entitled to limited deference where center of gravity of action is New York, not California).

## B. Convenience of the Parties

The convenience of the parties is also an important factor in determining whether to allow a transfer of venue. Jarvis is a resident of California, while Defendant is a New York corporation with its principal place of business in New York. The burdens associated with traveling across the country to litigate are relatively equal for all parties. Jarvis is already defending the New York action in New York state court and is therefore required to travel there to defend herself anyway. Further, Marietta is a large company and presumably has the financial means to support litigation in California. However, it would be burdensome on Marietta to send a significant number of its employees to California for purposes of trial. These employees, such as Marietta's vice president Austin, are involved in the daily operations of the company and it could be detrimental to business to remove them from their duties.

Finally, despite Plaintiff's contention to the contrary, *HN6*convenience of **[*11]** counsel is not a relevant factor in determining whether transfer of venue under section 1404(a) is proper. See *NCL America Computer Products v. BSM Computers, Inc.*, 1993 U.S. Dist. LEXIS 15332, 1993 WL 280565, *2 (citing *Solomon v. Continental American*, 472 F.2d 1043, 1047 (3d Cir. 1973)). Moreover, given the pending New York action, it is unclear that the factor supports transfer of this matter.

## C. Convenience of the Witnesses

*HN7*One of the most important factors in determining whether to grant a motion to transfer is the convenience of the witnesses. To demonstrate inconvenience, the moving party "should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action . . . The court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony." *Steelcase, Inc. v. Haworth*, 41 U.S.P.Q.2D (BNA) 1468, 1470 (C.D. Cal. 1996).

In its initial disclosures, Defendant identified a total of thirty-one witnesses that would have information regarding the sexual harassment action, the retaliation action, and Plaintiff's **[*12]** general performance as a Marietta employee. (Kuenzel Decl., paras. 6-8). Among those listed, only Plaintiff and one other witness reside in the Northern District of California, while three others reside within the State of California. Three additional witnesses reside in the western half of the United States. However, fifteen of these witnesses reside within the Northern District of New York and eight others reside in the eastern United States and Canada. At least seven of the witnesses identified by Marietta are non-party witnesses, and of those none reside in this District. (Kuenzel Decl., Exh. E).

In Plaintiff's initial disclosure, Plaintiff is the only witness identified that resides within the Northern District of California. (Kuenzel Decl., Exh. F). Of the remaining witnesses, one resides elsewhere in California, one resides in New Jersey, and two in Canada. Plaintiff also lists two expert witnesses, both of whom conduct business within the Northern District of California.

From these disclosures, it is clear that a majority of the witnesses are located in or near the Northern District of New York so as to make that district a more convenient forum for the witnesses in this **[*13]** case. However, since many of these witnesses are employees of Defendant, their inconvenience should be given less weight in the section 1404 context since they could be compelled to testify. See *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988). Given that several of the non-party witnesses identified by the parties reside in the eastern United States or Canada, transfer to the Northern District of New York seems more convenient for those witnesses as well. See *Gundle Lining Construction Corp. v. Fireman's Fund Insurance Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) *HN8*(convenience of non-party witnesses, rather than of employee witnesses, is a more important factor and therefore afforded greater weight).

Finally, the relative financial burdens on the parties for compelling witness testimony must be considered. As previously mentioned, although Marietta has no offices in California, it is a large corporation doing business in California through its representatives. While the costs associated with obtaining the witnesses' presence in California would be substantial, it does not seem that it would be an extraordinary financial burden **[*14]** on Marietta. On the other hand, Plaintiff's cost of getting witnesses to New York would most likely not be much higher than getting those same

witnesses to California.

Given the location of the witnesses and the purported purposes of presenting these witnesses, the convenience of the witnesses weighs in favor of transferring this case to the Northern District of New York.

## D. Ease of Access to Evidence

*HN9*⭲Absent any other grounds for transfer, the fact that records are located in a particular district is not itself sufficient to support a motion for transfer. See *STX*, 708 F. Supp. at 1556. However, where as here, the location of the evidence is supported by other factors in favor of transfer, the relative ease of access to proof is an important factor to be considered in deciding whether to grant a motion to transfer under section 1404. See *Decker Coal*, 805 F.2d at 843.

Here, the record shows that a majority of the documentary evidence, including corporate records, financial records, sales information, human resources files, and documents related to Plaintiff's alleged breach of the confidentiality agreement, are all located at the company's **[*15]** headquarters in Cortland, New York, within the Northern District of New York (Sechrist Decl., P 9) Furthermore, as Defendant points out, all of the relevant documents listed by Plaintiff in her initial disclosures are located in New York as well. (Kuenzel Decl, Ex. F, 2). While it is true that it would be easy to simply mail these documents to this Court for trial, it would be markedly easier to obtain these documents if the trial was held in New York. Finally, as Magistrate Judge Brazil noted in *Linear Technology*, "encouraging [the movement of documents] also would increase risks that the best evidence would be lost--thus implicating larger interests in the administration of justice." See 1995 WL 225672, *3.

Therefore, the Court finds that the convenience of the parties and witnesses in this case favors transfer of venue in this action. Especially given that fact that Plaintiff is defending another suit in New York, and that many of the parties and witnesses are located in the eastern United States and Canada, transfer to the Northern District of New York is warranted.

## IV. Interests of Justice

### A. Familiarity of Each Forum with the Applicable Law

**[*16]** *HN10*⭲An important factor in determining whether transfer of venue is warranted is the interest of having the trial in a forum that is familiar with the law. See *Decker Coal*, 805 F.2d at 843. The United States Supreme Court has stated that "[a] change of venue under [section] 1404(a) generally should be, with respect to state law, but a change of courtrooms." See *Van Dusen*, 376 U.S. at 639; see also *Ferens v. John Deere Co.*, 494 U.S. 516, 519, 108 L. Ed. 2d 443, 110 S. Ct. 1274 (1990). Therefore, a transferee court is obligated to apply the applicable law that would govern the transferor court. See *id*. The applicable law in this case, whether it is tried in New York or California, is New York law. This case involves an alleged breach of contract, wrongful termination, and sexual harassment claim based on an employment contract governed by New York law. Clearly, a New York court would be more familiar with the contours and applicability of New York law.

### B. Feasibility of Consolidation of Other Claims

*HN11*⭲The feasibility of consolidation of claims is also a factor for the court to consider in determining whether to allow a transfer **[*17]** of venue motion under section 1404(a). See *Decker Coal*, 805 F.2d at 843; *Eli Lilly & Co.*, 21 U.S.P.Q.2D (BNA) at 1207. Defendants claim that the facts and parties involved with this claim are the same as those in the pending New York Action. Defendant contends that Jarvis' employment with Marietta, her termination, and post-termination events are an essential part of both actions. It further claims that "the allegations to be litigated in the New York action are also at issue in this action by reason of Marietta's affirmative defense of offset." (Def's Motion to Transfer, 1). On the other hand, Jarvis claims that the New York Action deals with a breach of a confidentiality agreement while the present action is a sexual harassment and unemployment claim that is unrelated to the action filed in New York state. (Plaintiff's Opp., 7).

Given these facts, consolidation appears to be feasible in this case. While the claims do not involve all of the same relevant facts and claims, they do involve the same parties, and many of the same documents and witnesses would be essential to litigating both actions. Therefore, a transfer to the

Northern District of New York **[*18]** in this case will result in judicial economy in furtherance of the interests of justice. *See NCL America Computer Products v. BSM Computers, Inc.*, 1993 WL 280565, *1 (citing *A.J. Indus., 503 F.2d 384*); *but see Linear Technology*, 1995 WL 225672, *4 (court held where there was no "meaningful overlap between the vast majority of the matters" that were to be litigated, consolidation would not be feasible). ²

## FOOTNOTES

2 Jarvis claims that Defendants participated in unprofessional delay tactics by first removing this case to federal court, and then attempting to transfer venue several months later. (Plaintiff's Opp., 7). However, as Defendants point out, it would have been improper for Defendants to attempt to directly remove this case from California state court to a federal court in New York. Pursuant to 28 U.S.C. § 1446, a notice of removal may only be filed in the federal court for the district in which the state action is pending.

## C. Local [*19]  Interest in the Controversy

*HN12*An another important consideration is the "local interest in having local controversies decided at home." *Decker Coal, 805 F.2d at 843* (internal quotations omitted). Here, the actions which substantiate the claim occurred predominantly in New York and involve a New York corporation. While California does have an interest in protecting its citizens, New York clearly has an interest in its corporations and the activities they undertake. See *Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1141 (D. Haw. 1997)*. Especially given that most of the documentary evidence, witnesses and actions at issue in this case are, or occurred in, New York, New York has a greater local interest in the controversy at issue than does California.

## D. Relative Court Congestion

*HN13*An increasingly important factor in determining transfer of venue motions involves the consideration of average trial times and court congestion. See *Decker Coal, 805 F.2d at 843*. As Defendant notes, the time lapse from filing a case to its completion is somewhat longer in the Northern District of New York than in the Northern District of California. **[*20]** (Kuenzel Decl., Exh. G). While the Court has some familiarity with the operative facts, the Northern District of New York has had no involvement with this case. However, the time to trial and relative congestion of the two courts at issue here are sufficiently similar on this record so as to render this factor relatively neutral in the considering the transfer of venue motion.

An evaluation of the applicable law in this case, the feasibility of consolidation, any local interest in the controversy at issue, and relative court congestion supports the Court's finding that the interests of justice would be furthered by transferring this action to the Northern District of New York.

## CONCLUSION

For the convenience of the parties and witnesses, and in the interest of justice, the Court hereby GRANTS Defendants' motion to transfer venue to the Northern District of New York.

## IT IS SO ORDERED.

Dated: 8/12/99

MARTIN J. JENKINS

UNITED STATES DISTRICT JUDGE